IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN ROBERT WILLIAMS, III,

   Petitioner,

v.

DAVID GREENE,

   Respondent.

Civil Action No.: ELH-21-1590

MEMORANDUM

John Robert Williams, III has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. ECF 1 (the "Petition"). In a Limited Answer (ECF 5), Warden David Greene seeks dismissal of the Petition, claiming it does not raise a cognizable claim. The Limited Answer includes a copy of the State record. Petitioner has not filed a reply.

No hearing is necessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons stated herein, the Petition shall be denied and dismissed. A certificate of appealability shall not issue.

I.     Background[1]

Petitioner challenges his conviction in the Circuit Court for Prince George's County, Maryland. ECF 1 at 1. In particular, on January 22, 2019, a jury found Williams guilty of possession of a firearm after being disqualified by law (Count 1); possession of a regulated firearm

---

[1] Citations to page numbers correspond to the page numbers assigned by the court's electronic docketing system.

(Count 2); possession of firearms (Count 3); transporting a handgun in a vehicle (Count 4); and illegal possession of ammunition (Count 6). ECF 5-1 at 11.[2]

Sentencing was held on May 17, 2019. As to Count 1, the trial court sentenced Williams to fifteen years of imprisonment, with all but 5 years suspended, without the possibility of parole. ECF 5-1 at 12-13. Counts 2 and 3 merged with Count 1. *Id*. at 13. The trial court also imposed a consecutive three-year sentence for Count 4 and a one-year sentence, consecutive to Count 4, which the court suspended. *Id*.

Williams raises four claims for relief, all of which concern an alleged Fourth Amendment violation on March 18, 2018, when defendant's vehicle was searched and a gun was recovered. The officers searched the vehicle because one of them "detected the smell of marijuana . . . ." ECF 5-1 at 26. And, defendant's passenger acknowledged that he had marijuana in his pocket. *Id.* In addition, defendant attempted to leave the scene. *Id.* at 25-26. ECF 1 at 5.

Williams asserts that the police officers had "no reasonable articulable suspicion to make a stop" and notes that the discovery of facts after the stop cannot justify a stop where there is no basis for the detention. *Id*. (citing *Lawson v. State*, 120 Md. App. 610, 707 A.2d 947 (1998)). His second claim appears to be an explanation of why he believes the officers did not have a legitimate reason for making a stop. He asserts that at the suppression hearing the officers said they were suspicious of the parked vehicle because the business behind which the vehicle was parked was closed. ECF 1 at 5. According to Williams, the business was a carryout that closed at 11:00 p.m. and he was detained at "exactly 11:08." *Id*. In his third claim, Williams contends that the officers "illegally blocked" his car and kept him from leaving. *Id*. In his fourth claim, Williams asserts

---

[2] Several charges were nol prossed. And, Williams was found not guilty of Count 5, charging wear, carry, and transport a handgun.

that the police officers' activation of their emergency lights during the stop "constituted a seizure within the contemplation of U.S. Const. amend IV because it communicated to a reasonable person that there was an intent to intrude upon [his] freedom of movement." *Id*.

Williams filed a notice of appeal on May 23, 2019. ECF 5-1 at 13. On June 12, 2020, the Maryland Court of Special Appeals vacated Williams's sentences and remanded the case to the trial court for resentencing. ECF 5-1 at 17. The Court of Special Appeals reasoned that the trial court "did not recognize that it had discretion to commit [Williams] to a drug treatment program in lieu of the statutory mandatory minimum sentence." *Id*. at 24 (Unpub. Op. Ct of Spec. App.).

However, the appellate court rejected Williams's claim that the trial judge improperly denied his motion to suppress. The Maryland Court of Special Appeals said, ECF 5-1 at 31-37 (footnotes omitted; alterations in original):

> Appellant advances three arguments in support of his claim that the court erred in denying the motion to suppress the handgun, which we shall address in turn. First, appellant asserts that "crediting Officer Ruiz's testimony that she smelled marijuana was clear error[.]" He contends that "it would be clear error to conclude that Officer Ruiz smelled burnt marijuana because there was no evidence of a joint or smoke[,]" and that it "would also be clear error to conclude that Officer Ruiz smelled fresh marijuana because the only trace of fresh marijuana was contained in a plastic pill bottle." Appellant suggests that the court erred in finding that Officer Ruiz smelled marijuana because "both scenarios are incredible." We disagree.
>
> As we have previously noted, "a clearly erroneous holding should be limited to a situation where, with respect to a proposition or a fact as to which the proponent bears the burden of production, the fact-finding judge has found such a proposition or fact without the evidence's having established a *prima facie* basis for such a proposition or fact." *State v. Brooks*, 148 Md. App. 374, 398 (2002). "A finding of fact should never be held to have been clearly erroneous simply because its evidentiary predicate was weak, shaky, improbable, or a '50-to-1 long shot.'" *Id*. Rather, "[a] holding of 'clearly erroneous' is a determination as a matter of law, that, even granting maximum credibility and maximum weight, there was no evidentiary basis whatsoever for the finding of fact." *Id*. at 399. In reviewing a claim of clear error, "[t]he concern is not with the frailty or improbability of the evidentiary base, but with the bedrock non-existence of an evidentiary base." *Id*.

In ruling on the motion to suppress, the court acknowledged the absence of testimony characterizing the marijuana odor as either burnt or fresh. The court recognized that, if it were to infer from the evidence that Officer Ruiz smelled fresh marijuana, the weight of that evidence could be called into question absent a finding that it was possible to smell the fresh marijuana that was contained inside a pill bottle. The court noted that the evidence before it also supported an inference that the odor detected by Officer Ruiz as she neared the vehicle was burnt marijuana, and that the court could "take the position that the windows were rolled down in March to let the smoke out[.]" The court ultimately found that Officer Ruiz smelled marijuana, but did not find it necessary to make a specific finding as to whether the source of the odor was fresh marijuana or burnt marijuana.

We find no clear error in the court's finding. The testimony of Officer Ruiz, a sworn law enforcement officer who had training and experience in the identification and smell of marijuana, established a *prima facie* basis for the finding. Moreover, we agree with the court that a finding of exact source of the odor, whether from fresh or burnt marijuana, was not critical to its determination of whether the odor of marijuana constituted probable cause to search the vehicle.

This case is different from *Grant v. State*, 449 Md. 1 (2016), the only case cited by appellant in support of his argument that the trial court erred in finding that Officer Ruiz smelled marijuana. In *Grant*, the Court of Appeals held that the State failed to satisfy its burden of proving that a warrantless search of a vehicle was lawful because it was not clear whether the police officer smelled marijuana before or after inserting his head into the window of a vehicle during a traffic stop. *Id*. at 28-29. The Court explained that, because the latter scenario would constitute an illegal search, the ambiguity was "paramount at the suppression hearing because, where evidence of a lawful warrantless search is 'inconclusive[,]' the defendant must prevail." *Id*. (quoting *Epps v. State*, 193 Md. App. 687, 704 (2010)). Here, however, although the evidence did not establish whether Officer Ruiz smelled burnt marijuana or fresh marijuana, that ambiguity was not "paramount" because neither scenario would compel a conclusion that the search of the vehicle was illegal.

Next, appellant asserts that, assuming Officer Ruiz had probable cause to search the vehicle based on the smell of marijuana, that justification "dissipated" once Officer Ruiz took possession of the passenger's container of marijuana. Appellant claims that, "[w]hen Officer Ruiz began searching the car, she lacked probable cause because she had taken possession of the source of the marijuana odor and because the vehicle's occupant, who handed her the marijuana, was neither the owner nor driver of the vehicle, but a mere passenger." This argument was waived as appellant did not raise this theory in the circuit court in support of his motion to suppress. *See Ray v. State*, 435 Md. 1, 19 (2013) (where

4

a defendant advances one theory of suppression but fails to argue an additional theory that is later asserted on appeal, the defendant has "waived the right to have that claim litigated on direct appeal.")

Finally, appellant contends that he was seized without reasonable articulable suspicion, and therefore, the gun and ammunition found in the vehicle should have been suppressed as "fruit of the illegal seizure." We disagree.

"Under the 'fruit of the poisonous tree' doctrine, evidence tainted by Fourth Amendment violations may not be used directly or indirectly against the accused." *Miles v. State*, 365 Md. 488, 520 (2001). For evidence to be excluded under this doctrine, "there must be a 'cause-and-effect' relationship or nexus between the 'poisonous tree and its alleged fruit.'" *Id.* (citation omitted). The question is "whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Cox*, 194 Md. App. at 655 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

The court did not appear to make a specific finding as to whether there was a nexus between the seizure of appellant and the search of the vehicle. Appellant claims that there was no evidence that his seizure and the search of his vehicle occurred simultaneously, as the State argued at the suppression hearing, and therefore, the State "failed to carry its burden of proving that the warrantless search of the car was independent and separate from the illegal seizure of his person."

Where, as here, a suppression court's fact-finding is ambiguous, incomplete or nonexistent, we employ a "supplemental rule of interpretation" to determine whether there was sufficient evidence, as a matter of law, to support the ruling. *Morris v. State*, 153 Md. App. 480, 489-90 (2003). We accept the version of the evidence that is most favorable to the party who prevailed on the motion to suppress. *Id.* at 490. We "fully credit the prevailing party's witnesses[,]" "give maximum weight to the prevailing party's evidence[,]" and "resolve ambiguities and draw inferences in favor of the prevailing party and against the losing party." *Id*. at 490.

Applying those principles to the record of the suppression hearing, we hold that the evidence was sufficient, as a matter of law, to support the conclusion that the search of the vehicle had no nexus to the seizure of appellant but was "sufficiently distinguishable" from it. Therefore, even assuming, without deciding, that appellant was seized without reasonable suspicion, the fruit of the poisonous tree doctrine would not apply to evidence recovered from the vehicle. We explain.

Currently, in Maryland, where any amount of marijuana is still contraband, "a law enforcement officer has probable cause to search a vehicle where the law enforcement officer detects an odor of marijuana emanating from the vehicle[.]" *Robinson*, 451 Md. at 99.  According to Officer Ruiz's testimony, she detected the odor of marijuana at the trunk of the vehicle shortly after she and Officer Howard exited their police cruiser to investigate:

> [PROSECUTOR]: So, when you pulled into [the parking lot] did you make contact with that vehicle?
>
> [OFFICER RUIZ]: I did.
>
> [PROSECUTOR]: And when you pulled in, can you please explain to the Court what, if anything, you did next?
>
> [OFFICER RUIZ]: When we pulled in, I approached the vehicle, Officer Howard, he went towards the [appellant who] was leaving the vehicle. . . Officer Howard followed the [appellant]. . . . I saw there was another individual in the car, I went towards the vehicle.
>
> [PROSECUTOR]: . . . [W]here was that person seated?
>
> [OFFICER RUIZ]: In the front passenger's seat.
>
> [PROSECUTOR]: Okay.  And, so, as you approached the vehicle, what, if anything, occurred next?
>
> [OFFICER RUIZ]: I approached the vehicle, I observed the driver and the passenger's window down.  When I got to the trunk of the car, I smelled marijuana.  And that's when I approached the passenger's side and spoke to the passenger.

By contrast, according to Officer Howard's testimony, appellant was not seized right away.  He did not comply when Officer Howard first asked him to "come back," but kept walking.  Officer Howard gave "multiple" commands to stop, which appellant continued to ignore.  Appellant eventually disappeared from the officer's sight for a period of time, then walked back to the area before he finally complied with the order to have a seat.[]

Viewing the evidence and the inferences to be drawn therefrom in favor of the State, and resolving any ambiguities in the same way, we conclude that the evidence was sufficient as a matter of law to support the conclusion that probable cause to search the vehicle arose prior to the seizure of appellant by Officer Howard.[]  Accordingly, the evidence recovered from the vehicle was not subject to exclusion as fruit of the allegedly unlawful seizure.

6

> In sum, we conclude that the court did not err in concluding that the search of the vehicle was lawful. Accordingly, we shall affirm the court's denial of the motion to suppress the gun from evidence.

Williams's Petition for writ of certiorari, filed with the Maryland Court of Appeals, was denied on July 24, 2020. *Id*. at 17.

## II.     Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). And, of relevance here, the federal habeas statute sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). As the Fourth Circuit said in *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009): "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

"The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (internal quotation marks and citations omitted). In *Nicolas v. Atty. Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016), the Fourth Circuit explained (citing 28 U.S.C. § 2294(d)):

> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a federal court reviewing a habeas petition that has already been adjudicated on the merits in state court to give considerable deference to the state court decision. A federal court may not grant habeas relief unless the state court arrived at "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Put another way, the standard requires the federal court to give a state-court decision "'the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted); *see also White v Woodall,* 572 U.S. 415, 419-20 (2014) (state prisoner must show state court ruling on claim presented in federal court was "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.'") (quoting *Richter*, 562 U.S. at 103). Indeed, the habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Nicholas*, 820 F.3d at 129.

However, "[w]here the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

In this case, the Maryland Court of Appeal denied certiorari. Therefore, this Court "evaluate[s] the last reasoned state court decisions . . . ." *Nicolas*, 820 F.3d at 129. Moreover, this Court "cannot disturb the state court's ruling simply because it is incorrect; it must also be unreasonable." *Nicolas*, 820 F.3d at 129; *see Harrington v. Richter*, 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(e)(1).

In sum, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United

8

States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014); *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005). Notably, a federal court "may not issue the writ simply because [the court] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411). Rather, the state court's application of federal law must be unreasonable, not merely incorrect. *Id.*; *see Barnes*, 751 F.3d at 238-39 (state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct governing principle but unreasonably applies that principle to the facts).

Pursuant to the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "*an unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 365 (emphasis in *Williams); see also James v. Harrison,* 389 F.3d 450, 454 (4th Cir. 2004).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might

9

disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

### III.     Discussion

Federal habeas corpus relief is not available for an alleged Fourth Amendment violation where the petitioner was afforded an opportunity for full and fair litigation of the issue in state court. *Stone v. Powell*, 428 U.S. 465 (1976); *Boggs v. Bair*, 892 F.2d 1193 (4th Cir. 1989), *cert. denied*, 495 U.S. 940 (1990); *Doleman v. Muncy*, 579 F.2d 1258 (4th Cir. 1978). As observed by the Supreme Court, the purpose of excluding evidence obtained in violation of the Fourth Amendment is to deter misconduct of law enforcement officers conducting the searches. *See Stone*, 428 U.S. at 490-92. Providing an additional avenue for exclusion of evidence through federal habeas relief is unlikely to deter misconduct. Thus, the proper focus is on whether the Fourth Amendment claim was previously given full and fair consideration in the state courts. *Id*.

Williams's Fourth Amendment claim was litigated at the pretrial suppression hearing and through direct appeal to the Maryland Court of Special Appeals. *See* Md. Rule 4-252(a) and (h)(2) (motions to suppress evidence). Both the trial court and the appellate court found that police had probable cause to search Williams's vehicle and that he was not seized until the probable cause for the search ripened. *See* ECF 5-1 at 36-37.

Williams was provided with an opportunity to litigate his Fourth Amendment claim; no further inquiry into the merits of his allegations is required. *Doleman*, 579 F.2d at 1265. Accordingly, the Petition lacks merit.

### IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. ___, 137 S.Ct. 759, 773 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). When a district court rejects constitutional claims on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

This Court finds that there has been no substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. *See* 28 U.S.C.§ 2253(c)(2). But, Williams may still ask the United States Court of Appeals for the Fourth Circuit to issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## V. Conclusion

A separate Order follows, denying and dismissing the Petition. And, I decline to issue a certificate of appealability.

November 10, 2021      /s/
Date                   Ellen L. Hollander
                       United States District Judge